IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT WRIGHT** | : | **CRIMINAL NO. 05-619-1** |
| **EDWARD BASLEY** | : | **CRIMINAL NO. 05-619-2** |

# GOVERNMENT'S MOTION FOR INQUIRY AS TO CONFLICT OF INTEREST

## I. INTRODUCTION

The United States of America, by its undersigned attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Karen L. Grigsby, Assistant United States Attorney for the district, respectfully requests that this Court make a factual inquiry into this matter and thereafter, upon sufficient basis, determine (1) whether Edward Basley's counsel, Ronald Greenblatt, Esquire, suffers from a conflict of interest, (2) whether Basley and Robert Wright waive that conflict, and (3) whether, despite any such waivers, disqualification of Mr. Greenblatt is nonetheless required. In support of this motion, the government represents:

## II. FACTUAL BACKGROUND

In or about September 2004, the Drug Enforcement Administration's Task Force began an investigation of the drug activities of Robert Wright and Edward Basley. Eventually, the Task Force obtained authorization to intercept wire communications occurring over a cell phone used by Wright. Over a two-month period, the DEA Task Force intercepted thousands of phone calls, conducted numerous surveillances, and eventually identified several of Wright's confederates, among them Keynan Green.

In June 2005, an undercover Philadelphia police officer made four controlled purchases of cocaine base ("crack") from Green. On or about August 22, 2005, Green was arrested on a Complaint and Warrant, charging him with the four crack sales to the undercover officer. When the DEA Task Force went to arrest Green outside of his stash house on that date, Green fled, discarding a baggie of crack and powder as he ran. Task Force officers caught him after a short foot pursuit. The officers then obtained a search warrant for the stash house that Green had just exited and recovered an additional quantity of crack and powder from the ceiling, along with a Ruger. Agents also recovered packaging paraphernalia, a heat sealer, an electronic scale, and mail addressed to Green, as well as Green's license and credit card which were in a safe in the house. On Green's key chain was not only a key to the stash house but also a key to the Ruger.

At Green's initial appearance on August 23, 2005, Ronald Greenblatt, Esquire, entered his appearance for Green. On September 21, 2005, Green was indicted (Cr. No. 05-544). Trial is scheduled for February 13, 2005, before the Honorable Stewart Dalzell. Green continues to be represented by Mr. Greenblatt in that matter.

On November 7, 2005, the government charged Edward Basley by Complaint and Warrant as a felon in possession, arising from his arrest in possession of a firearm on that date. Mr. Greenblatt entered his appearance for Basley at Basley's initial appearance.

On November 9, 2005, the government unsealed an indictment charging Robert Wright (a/k/a "Jalil"), Edward Basley (a/k/a "Beeb"), Elleri Bailey (a/k/a "El"), Brian Stevens (a/k/a "Feree" a/k/a "Farid"), Larry Ellison, Kareem Myers, Sean Ruffin (a/k/a "Dance," a/k/a Sean Womack), and Dennis Walls (a/k/a "Mustafa," a/k/a "Moo"), with drug and gun violations

in this case, (United States v. Robert Wright et al., Cr. No. 05-619). On November 28, 2005, Mr. Greenblatt entered his appearance for Basley in this matter. The government advised Mr. Greenblatt that it would likely supersede the indictment, adding the November 7, 2005, gun charge against Basley. The superseding indictment was returned on December 7, 2005, adding the gun charge (among others).

The government has advised Mr. Greenblatt that the charges against his client Keynan Green (Cr. No. 05-544) and the charges against Wright, Basley, Bailey, Stevens, Ellison, Myers, Ruffin, and Walls (Cr. No. 05-619), all arise from the same investigation, and the government believes that Wright, Basley, and Green each potentially could cooperate against the other(s). Additionally, Mr. Greenblatt has advised the government that in the past, he represented Wright in an unrelated matter in state court.

Mr. Greenblatt has advised the government that Basley and Green each wish to continue to be represented by him and are willing to waive any conflict of interest. Guy Sciolla, Esquire, who represents Robert Wright, has advised the government that he believes that Wright will waive any possible conflict and not seek to have Mr. Greenblatt disqualified from representing Basley or Green.

Despite defense counsel's assurances, at a minimum, Basley and Wright must be colloquied on the record as to their understanding of the conflict and their willingness to waive any conflict of interest. Even if Basley and Wright are willing to waive any conflict of interest, this Court may nonetheless determine that an actual conflict exists and that disqualification is necessary.[1]

[1] The government has filed a similar motion for a conflict hearing in Green.

**III. ARGUMENT**

The Sixth Amendment provides an absolute right to the assistance of counsel. The right to counsel of choice, however, is not absolute. Wheat v. United States, 486 U.S. 153 (1988). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat, 486 U.S. at 159. Thus, as the Court observed, "a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party...." Wheat, 486 U.S. at 159.

The Court has explained, "The [trial court] must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be let primarily to the informed judgment of the trial court." Id., 486 U.S. at 164.

Accordingly, a district court must inquire into a known potential conflict. See Cuyler v. Sullivan, 446 U.S. 335, 357 (1980). Ultimately, a decision to disqualify counsel must be "left primarily to the informed judgment of the trial court," Wheat v. United States, 486 U.S. 153, 164 (1988); see also United States v. Mays, 69 F.3d 116, 121 (6th Cir. 1995)(decision to disqualify counsel receives wide latitude). A decision to disqualify counsel is not subject to

interlocutory appellate review. See Flanagan v. United States, 465 U.S. 259, 263 (1984); In re Investigative Grand Jury Proceedings, 621 F.2d 813, 814 (6th Cir. 1980).

Here, the facts and circumstances clearly demonstrate a serious potential for conflict, if not an actual conflict. Thus, this Court should conduct an inquiry to determine whether Basley and Wright are aware of the facts alleged by the government, and whether they wishes to waive their right to conflict-free counsel. The Court must then determine whether, despite any such waiver, the Court must disqualify Mr. Greenblatt in the interest of preserving the integrity of the proceedings in this case.

**A. There may be a serious conflict of interest in Mr. Greenblatt's representation of both Basley and Green, where Basley and Green could cooperate against each other. Likewise, Mr. Greenblatt may suffer from a serious conflict of interest in his in representation of Basley and Green, where Basley and Green could cooperate against Mr. Greenblatt's former client, Robert Wright.**

There may be a serious conflict of interest inherent in Mr. Greenblatt's continued representation of Basley in this case and Green in the other case. First, the government's evidence shows that Basley and Wright are criminal associates. Additionally, the intercepted calls clearly show that Green is a criminal associate of Wright. It is entirely reasonable to assume that Basley and Green also know each other and know about each other's criminal activities. (While the government can only assume that Basley and Green know each other, Basley certainly knows whether he knows Green and what he knows about Green's criminal activities.) Thus, presumably, Basley and Green each could cooperate against the other – but this is precisely a course that Mr. Greenblatt cannot vigorously recommend, as he represents both of them.

As of this date, neither Basley nor Green has entered a guilty plea, nor has either signed a cooperation plea agreement. Potentially, each could waive any conflict of interest that may exist, and one or both could plead guilty (without a cooperation plea agreement) or go to trial, and no conflict would actually materialize. However, the issue would remain as to whether each knowingly chose to forfeit the possibility of cooperating against each other.[2] As to that issue, there remains a serious question, which must be explored in an on-the-record colloquy with each defendant.

Moreover, there is at least the appearance of a conflict of interest, if not an actual conflict of interest, arising from Mr. Greenblatt's prior representation of Wright and his current representation of Basley. That is, if Basley wanted to sign a cooperation plea agreement and testify against Wright, Wright might object that Mr. Greenblatt may have learned facts about Wright in his prior representation and that he might encourage Basley to make those facts known to the government. While the government is not aware of any such facts, and while Mr. Greenblatt may feel that there are none, the possibility remains that, at some later date, he could remember something. If Mr. Greenblatt refrained from urging Basley to share those facts, he may have breached his duty to Basley; if he urges Basley to speak to the government about such facts, he will have violated his duty to Wright. Plainly, the potential conflict exists and may be raised at a later time, including post-verdict.

---

[2] Of course, there is no guarantee that the government would choose to enter a cooperation plea agreement with either Green or Basley.

**B. Even if Basley waives any conflict of interest, this Court is not required to accept such a waiver, but must make an independent determination as to whether Mr. Greenblatt must be removed.**

Mr. Greenblatt has advised the government that both of his clients, Basley and Green, are willing to waive any conflict of interest that may exist. Moreover, Mr. Sciolla has advised that government that, at this time, he does not believe that Wright wants to assert any conflict on Mr. Greenblatt's part arising from Mr. Greenblatt's prior representation. As of this date, all three defendants are going to trial; none has entered a guilty plea and none has signed a cooperation plea agreement. Accordingly, this Court should colloquy Basley on the record, determining whether he is aware of the factual basis for the conflict, and further determining whether he wishes to waive his right to conflict-free counsel and proceed with Mr. Greenblatt, or whether he wishes to have new counsel appointed. However, even if Basley waives his right to conflict-free counsel, this Court must determine whether to accept any such waiver.

"Whether a defendant has made a valid waiver of his Sixth Amendment rights depends 'upon the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" United States v. Martinez, citing Edwards v. Arizona, 451 U.S. 477, 482 (1981). In making this determination, the court must "indulge every reasonable presumption against the waiver of fundamental rights." United Sates v. Allen, 831 F.2d 1487, 1489 (9th Cir. 1987) (citation omitted). A judge may refuse to accept even a voluntary waiver, United States v. Flanagan, 679 F.2d 1072, 1076, n.6 (1982), reversed on other grounds, 465 U.S. 259 (1984), since, as, the Court in Wheat noted, there are interests to be considered other than just the defendant's right to counsel of choice. Wheat, 486 U.S. at 160.

Thus, appellate courts have frequently affirmed a trial court's order disqualifying counsel of choice, despite the witness or defendant's explicit waiver of his right to conflict-free counsel. E.g., Wheat v. United States (affirming defendant's conviction and finding that trial court did not abuse its discretion in disqualifying defendant's counsel of choice, despite defendant's willingness to waive his right to conflict-free counsel), Flanagan, 527 F.Supp. 902, 909 (E.D. Pa. 1981) (disqualifying counsel despite knowing, voluntary and intelligent waiver of the right to conflict free counsel where, although no actual conflict of interest had yet developed, there was a clear potential for conflict), affirmed, 679 F.2d 1072 (3d Cir. 1982), reversed on other grounds, 465 U.S. 259 (1984). As the Supreme Court has observed, where there is a conflict of interest:

> "Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver" . . . [Hence,] the trial court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict or a showing of serious potential for conflict.

Wheat, 486 U.S. at 162-163 (quoting United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978).

Moreover, the Court has its own interest in ensuring the integrity of the proceedings, so that any guilty verdict (or even a guilty plea) not be subject to appeal or collateral attack. As the Supreme Court observed, "Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent

willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." Wheat, 486 U.S. at 161-162.

Accordingly, the Court should regard any waiver offered in this case with great care.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully requests that this Court make a factual inquiry into this matter, and thereafter, upon sufficient basis, determine whether Mr. Greenblatt may continue as Edward Basley's defense counsel, or whether Basley must obtain new, conflict-free counsel.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

____________________________
THOMAS PERRICONE
Assistant United States Attorney
Chief, Narcotics

____________________________
KAREN L. GRIGSBY
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that I caused to be served a copy of the foregoing by electronic service to the following:

Ron Greenblatt, Esquire
1429 Walnut Street
Philadelphia, PA 19102

Guy Sciolla, Esquire
1910 Land Title Building
100 South Broad Street
Philadelphia, PA 19110

______________________________
KAREN L. GRIGSBY
Assistant United States Attorney

Date: 1/20/06

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT WRIGHT** | : | **CRIMINAL NO. 05-619-1** |
| **EDWARD BASLEY** | : | **CRIMINAL NO. 05-619-2** |

**ORDER**

AND NOW, this day of , 2006, it is hereby ORDERED, that this matter shall be listed on , 2006, for a determination of whether defense counsel suffers from a conflict of interest, whether defendants waive that conflict, and whether the Court will accept such waivers.

BY THE COURT:

____________________________________
HONORABLE CYNTHIA M. RUFE
*Judge, United States District Court*